(121 App. Div. 593.)

PEOPLE ex rel. EGGERS v. BINGHAM, Police Com'r.

(Supreme Court, Appellate Division, Second Department. October 23, 1907.)

1. MUNICIPAL CORPORATIONS—POLICE DEPARTMENT—SUSPENSION OF POLICEMEN—PROCEEDINGS—EVIDENCE.

On the hearing of charges against a police officer for failing to proceed against a disorderly house, where his defense was that he had been ordered by the police commissioner to report such matters to his secretary and take orders from him, and that he had done so in this case and had been ordered not to proceed against the house, it was error to exclude evidence that the officer had repeatedly reported to the commissioner's secretary in the same class of cases and received orders from him which he had obeyed.

2. EVIDENCE—ADMISSIONS—PART OF CONVERSATION—EXPLANATION.

On the hearing of charges against a police officer for failing to proceed against a disorderly house, where a policeman testified as to conversations he had had with accused when the latter directed no further proceedings to be taken against the premises, it was error to refuse to allow him to state on cross-examination that accused had told him in the same conversations that he had orders from his superior not to take action.

Miller, J., dissenting.

Certiorari by the people, on the relation of William J. Eggers, to review an order of Theodore A. Bingham as police commissioner, etc. Order reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

Jacob Rouss (Louis J. Grant, on the brief), for relator.

Edward H. Wilson (James D. Bell, on the brief), for respondent.

RICH, J. This is a review by certiorari of the proceedings of the police commissioner of the city of New York, and of his order finding the relator guilty of conduct unbecoming an officer and willful neglect of duty and dismissing him from the service. The relator was a sergeant and acting captain in charge of the "vice squad," so called, and concededly directed two officers under his command to ascertain, if possible, whether the law was being violated at No. 158 West Fifty-Fourth street by the keeping thereon of a disorderly house. These officers testified that upon receiving such directions they visited the premises and reported to him that they had procured evidence that the house was a disorderly house, and that one of them (Johnson) twice thereafter called his attention to the case and was directed to let the matter drop, or to let it rest—to take no further action against the house at that time. The relator concedes that Johnson reported direct to him, and informed him that the other officer had been in the house also, and that they had some evidence against the place; that Johnson twice later called his attention to the case; that he made no report to any superior police officer; and that no arrests or application for a warrant were made. There is no question on the uncontradicted evidence of these officers that the house was a disorderly house, and that the evidence procured by them called for a prosecution.

It was the duty of the relator to have caused such action to be taken, but he justifies his course upon the theory that Police Commissioner McAdoo, the predecessor of the respondent, who approved the findings and made the order complained of, had given him general directions to report in cases of this character to his secretary, one Howell, and take orders from him as to the action to be followed in such cases, in pursuance of which he did report to Howell that two of his men had made visits to the place and had secured some evidence, and was directed by Howell: "Well, don't do anything with that; don't act on this place just now, until you get stronger evidence"—in conformity with which he advised Johnson that Howell had directed that no action be taken on the case until he directed action. The relator's testimony that he was given such directions by the police commissioner was not controverted. Even if he refrained from the performance of his duty in obedience to the request of Howell, this cannot, of course, excuse

his conduct. If he had knowledge that the law was being violated, it was his duty to suppress the violation; but if, in failing to do this, he acted under orders of his superior, we think the punishment was too severe, while if he did not refrain from acting in consequence of any superior interference, but simply neglected his duty, the decision ought to stand. The crucial question, therefore, is: Did relator fail to act upon the advice of Howell, or from motives of his own?

We are not entirely satisfied that he did not honestly intend to suppress the place. Howell testifies that he did not receive any such report as to the premises in question from relator, or give him any directions regarding the case, that he can remember. It is incredible that he should not remember whether such report was made and directions given. The relator had been a member of the force for 14 years, and only about a month before this occurrence had received honorable mention from the commissioner for "exceptional zeal, intelligence, fidelity, integrity, and marked good results of police service." He had just before that time raided this same house. He had applied for hundreds of warrants, and caused hundreds of raids to be made, as the uncontradicted averments of his petition show. At the same time that he directed the procurement of evidence against this house, he directed similar action against a house located at 204 West Forty-Sixth street, and upon receiving the reports of his officers directed the procurement of a warrant, which was refused by the magistrate to whom application was made because of the insufficiency of the evidence. Upon the hearing he repeatedly sought to show that in pursuance of his general order from the police commissioner, and with his knowledge and approval, he had repeatedly reported to Howell in this class of cases, and received orders from him which he had obeyed. This evidence was both material and competent, and its exclusion was error.

When the witness Johnson was on the stand, he was permitted on his direct examination to state the conversations between the relator and himself when the former directed no further proceedings to be taken against the premises in question. Upon his cross-examination counsel for the relator asked him if in those conversations, and particularly the last one, the relator did not say to him: "Don't do anything for a while, as I have received orders from Mr. Howell not to do anything in regard to that house at present." At different times during the cross-examination counsel labored strenuously to get this evidence on the record, with the same result. It requires no argument to establish the legal proposition that when one litigant upon a trial proves part of a conversation, competent and material, his adversary is entitled to the whole of it, and the exclusion of this evidence was error. An officer ought not to be deprived of an enviable record honestly and meritoriously earned by years of faithful and commendable service, unless the evidence against him shall be convincing and preponderating in weight, and nothing short of this should be held to justify a punishment as severe as that inflicted upon the relator.

The proceedings of the police commissioner must be annulled and set aside, and the relator restored to his position, with $50 costs and his disbursements in this court. All concur, except MILLER, J., who dissents.